**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert L. HUGHES and George Norton,**
**d/b/a Tishomingo Grain Elevator, Tish-**
**omingo, Mississippi, Defendants.**

**No. EC 7060–S.**

United States District Court,
N. D. Mississippi, E. D.

March 3, 1972.

H. M. Ray, U. S. Atty., Norman L. Gillespie, Asst. U. S. Atty., Oxford, Miss., for plaintiff.

Floyd Cunningham, Booneville, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action came on for trial before the court without a jury at the United States Courthouse at Aberdeen, Mississippi on November 17, 1971.

After receiving the evidence in the case the court delayed the rendition of a decision pending the submission of briefs by the parties.

The briefs having been received, the action is now ripe for decision. The court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure are contained in the following decision.

Plaintiff United States of America (Government) brought this action to obtain a judgment on several promissory notes executed by defendant Robert L. Hughes (Hughes). The Government alleged that Hughes' indebtedness amounted to $9,347.34, plus interest of $716.58 through April 27, 1970, with interest accruing thereafter at the daily rate of $1.2804.

The Government also sought an order authorizing the foreclosure of a Security Agreement executed by Hughes to secure payment of the indebtedness. The Security Agreement and also a Financing Statement were executed by Hughes on February 26, 1969. Hughes granted the Government through the Security Agreement and Financing Statement a security interest in all crops to be grown by or for him during the year 1969 on farms situated in Prentiss County, Mississippi owned by H. M. Whitehead and Leamon L. Inman. The documents also conveyed to the Government a security interest in certain farm equipment and livestock owned by Hughes. The Security Agreement contained appropriate provisions for the foreclosure of the security interest conveyed thereby.

The Financing Statement and the Security Agreement were drawn so as to conform to all requirements of law. The Financing Statement was forthwith filed for record and duly recorded in the office of the Chancery Clerk of Prentiss County, Mississippi, the domicile of Hughes, and the county in which the land upon which the crops were to be grown was situated, as the law requires.

The Government sues defendant George Norton, d/b/a Tishomingo Grain Elevator, Tishomingo, Mississippi (Norton) in the action sub judice for conversion of certain soybeans grown by Hughes during the year 1969 on the land in Prentiss County, Mississippi owned by Whitehead and Inman. The Government contends that Hughes sold Norton a portion of the bean crop grown by him on the land aforesaid without the written consent of the Government. Hughes did not answer the complaint; and, after default had been entered by the clerk, the court entered a judgment by default against Hughes for the sum of $9,347.34, plus interest of $990.58, which interest had accrued through November 27, 1970. The judgment directed the Marshal to sell the chattels covered in the Security Agreement and in which the Government had a security interest. The order directed that from the proceeds of sale the Marshal should pay all costs of the action and the expenses of seizure and sale and then apply the remainder toward satisfaction in full of the judgment awarded the Government against Hughes.

At the time of the hearing Hughes owed the Government a balance of $4,147.34 on the default judgment which had been theretofore entered against him.

Norton, however, answered the complaint and denied all liability to the Government growing out of or resulting from the purchase of beans from Hughes. Norton has filed a cross-claim against Hughes seeking to recover from Hughes any sum which the Government might recover against Norton by this suit. At the time of the hearing Hughes had not been served with process on the cross-claim and had not answered the same. The court directed process to issue for Hughes and he has now been personally served with summons thereon. The time within which Hughes may answer the cross-claim has expired and Hughes has not answered or otherwise pled to the cross-claim but is now wholly in default in regard thereto.

The court finds that Norton purchased four batches of soybeans from Hughes in which the Government held a

valid security interest on the dates and in the net amounts as follows:

| Date of Purchase | Net Amount |
| --- | --- |
| November 12, 1969 | $ 406.12 |
| November 29, 1969 | 455.63 |
| December 3, 1969 | 489.82 |
| December 4, 1969 | 424.36 |
| Total | $1,775.93 |

Norton does not deny buying the beans from Hughes nor that the Government held a valid security interest in the beans at the time he purchased the same. Norton seeks to avoid liability on account of the purchases on the ground that the Government did not record the Financing Statement in Tishomingo County, Mississippi, where Norton's business is situated and where the beans were marketed. Tishomingo and Prentiss Counties are adjacent counties in Mississippi. The local custom for farmers in each county is to market their crops in either county.

Norton also relies upon the established practice of the Farmers Home Administration (FHA) Prentiss County office to send annually a list of all Prentiss County farmers who have received advances from FHA for the year to all prospective purchasers of Prentiss County crops. Norton received such lists in previous years but contends that he did not receive a list in 1969 upon which Hughes was shown to be a borrower of FHA.

Norton also relies upon the practice of the supervisor of the Prentiss County office to permit borrowers to market their crops on their own, provided, the borrower will bring the proceeds of the sale to the FHA office and apply the same on the indebtedness of the borrower. The Security Agreement, however, contains a provision that Hughes ". . . will . . . not . . . sell or otherwise dispose of it (collateral) . . . without the prior written consent of the secured party. . . ."

It is undisputed in the record that the FHA supervisor at the Prentiss County's office did not give his written consent for Hughes to sell the beans to Norton.

The court concludes from all of the evidence that Norton purchased from Hughes in 1969 soybeans of the aggregate value of $1,775.93, at the times and for the considerations above set forth; that said beans were produced by Hughes in 1969 on the land of Whitehead and Inman in Prentiss County, Mississippi; that at the time of the sale of the beans to Norton they were covered by the Security Agreement above mentioned and the Government had a perfected security interest therein; that the Government did not consent to the sale of the beans by Hughes to Norton; and that the Financing Statement aforesaid was recorded in the manner and at the place required by law.[1]

In this circuit, at least, it is clear that the rights of the parties in the action sub judice are governed by federal and not by state law. The Fifth Circuit in the recent case of United States v. Hext, 444 F.2d 804 (1971) at page 809, said:

"We therefore hold that the rights and liabilities of the parties to suits arising from FHA loan transactions must, under the rationale of the *Clearfield Trust* doctrine, be determined with reference to federal law, to be

1. Miss.Code Ann., § 41A:9-401, provides in part:
"(1) The proper place to file in order to perfect a security interest is as follows:
(a) when the collateral is equipment used in farming operations, or farm products, or accounts, contract rights or general intangibles arising from or relating to the sale of farm products by a farmer, or consumer goods, then in the office of the chancery clerk in the county of the debtor's residence of if the debtor is not a resident of this State then in the office of the chancery clerk in the county where the goods are kept, and in addition when the collateral is crops in the office of the chancery clerk in the county where the land on which the crops are growing or to be grown is located;"

fashioned by the federal courts according to general principles of commercial law."

And at page 810 in the *Hext* case, the court said:

". . . We have therefore determined that in fashioning the general law that is applicable to suits arising from the FHA loan programs we shall be guided by the principles set forth in Article 9 and other relevant portions of the Uniform Commercial Code."

■ Turning then to Mississippi's Uniform Commercial Code, Article 9, we find that the Financing Statement was properly filed in the office of the Clerk of the Chancery Court of Prentiss County, Mississippi, the county in which Hughes resided and in which the land is situated. Miss.Code Ann. 41A:9–401(1) (a), supra, Article 9 does not require the filing of the Financial Statement in any county other than Prentiss County. The Prentiss County filing was, therefore, legal and sufficient constructive notice to Norton of the security interest held by the Government in the beans which he purchased from Hughes. Norton's contention that he bought the beans from Hughes without notice of the Government's security interest therein, cannot defeat the claim of the Government for the conversion thereof.

Neither can Norton claim the protection of a buyer of goods under the Uniform Commercial Code. Hughes, during 1969, was a person engaged in farming operations and for that reason Norton cannot claim the benefit of Miss.Code Ann. § 41A:9–307(1) which provides in part:

"A buyer in ordinary course of business (subsection (9) of Section 1–201 [§ 41A:1–201(9)] *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis added).

Miss.Code Ann. § 41A:1–201(9), mentioned in Section 41A:9–307(1) aforesaid, provides in part:

"(9) 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interests of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. . . ."

Miss.Code Ann., § 41A:9–306(2) provides:

"(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

■ Hughes, during the year in question was "a person engaged in farming operations". Thus, Norton did not purchase the beans, which are classified as "farm products" from Hughes free from the security interest of the Government. On the other hand, the Government's security interest continued after the sale and supports its claim of conversion by Norton.

■ The defense of waiver is equally unavailable to Norton. The County Supervisor of the FHA office in Prentiss County was not authorized to waive the Government's security interest in the beans. It is immaterial that the FHA Supervisor in Prentiss County furnished prospective purchasers of Prentiss County crops, a list of Prentiss County borrowers or that the Supervisor made it a practice of permitting FHA borrowers to market their crops and account to the FHA office for the proceeds. The existence of such facts, if such be true, would not be sufficient to effect a waiver of the Government's lien.

544

An FHA County Supervisor cannot exceed the authority with which he is vested by Government regulations. The regulation governing the action of the County Supervisor in the action sub judice is found in 6 CFR Chapter III, Section 371.5, which states:.

*"Releasing Security Property*

(a) . . . County Supervisors are authorized hereby to release basic security when the property has been sold or exchanged for its fair market value, and the proceeds are used for one or more of the following purposes:

"(1) To pay on the debt owed to the Farmers Home Administration which are secured by liens on the property sold.

"(2) To purchase from the proceeds of the sale, or to acquire through exchange property more suitable to the borrower's needs, subject to the following conditions: The new property, together with any proceeds applied to the indebtedness, will have security value to the Farmers Home Administration at least equal to that of the lien formerly held by the Farmers Home Administration on the old property. The new property must be made subject to a lien in favor of the Farmers Home Administration by . . . 'after acquirer property' clause in lien instrument."

The courts have consistently held that agents or employees of the government have no authority to waive chattel mortgage liens. United States v. Thomas, 107 F.2d 765 (5th Cir. 1939); United States v. Chickasha Cotton Oil Company, 115 F.2d 135 (10th Cir. 1940). The practice of permitting its borrowers to market crops and account for the proceeds could not have constituted a waiver of the Government's lien in the action sub judice.

Norton cannot escape liability on the premise that he did not have actual knowledge of the Government's lien. As the Fifth Circuit said in United States

v. McCleskey Mills, Inc., 409 F.2d 1216, 1218 (1969), "Under the 'federal rule' actual innocence of a perfected security interest is no defense to a claim of conversion."

In sum, the court holds that the Government is entitled to recover of Norton the sum of $1,775.91, with interest from conversion dates, and costs; and that Norton is entitled to recover from Hughes the amount of the judgment obtained against Norton by the Government, with interest at the legal rate until paid and all costs incurred in this proceeding.