JAIME PEREZ, Plaintiff

v.

THE BANK OF NOVA SCOTIA and SUNNY ISLE SHOPPING CENTER, Defendants

Civil No. 203-1975

District Court of the Virgin Islands

Div. of St. Croix

September 30, 1975

Attorney General Office, Assistant Attorney General, JAMES W. DIEHM, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

ISHERWOOD, COLIANNI, ALKON & BARNARD, ESQS. (GEOFFREY W. BARNARD, ESQ., of counsel), Christiansted, St. Croix, V.I., *for defendant The Bank of Nova Scotia*

MARIO DECHABERT, ESQ., Christiansted, St. Croix, V.I., *for defendant Sunny Isle Shopping Center*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND ORDER

This is an action for interpleader in which the plaintiff, the Chief Deputy Marshal of the Municipal Court of the Virgin Islands, seeks a determination as to which of the two defendants, Bank of Nova Scotia ("Bank") and Sunny Isle Shopping Center, Inc. ("Sunny Isle") is entitled to the $16,000.00 proceeds of a Marshal's sale. On August 1, 1975, the Bank brought a cross-claim against defendant Sunny Isle alleging a prior and superior interest in the sale proceeds and also moved this Court for entry of summary judgment on the cross-claim. On September 18, 1975, Sunny Isle filed its cross-claim against the Bank seeking a judgment against the Bank in the sum of $44,125.00. [It is not made clear why Sunny Isle believes that it should have a *judgment* against the Bank for the payment of the judgment obtained against the judgment letter. I will presume Sunny Isle merely means to press a lien against the sale proceeds of $16,000.00 superior to that of the Bank.] Sunny Isle has also moved for Summary Judgment on its cross-claim "against cross-claimant Bank of Nova Scotia".

### I

### BACKGROUND FACTS

On August 25, 1970, Sunny Isle entered into a lease agreement with Abdeljaber A. Suid, as the sole proprietor of the Worldwide Fashion Center, hereinafter sometimes referred to as "Tenant", "Suid" or "Worldwide Fashion Center", for the rental of space at the shopping center. The agreement provided, inter alia, that the landlord shall have a lien for all rentals due from the tenant upon all goods,

wares, equipment, fixtures, furniture and other personal property of the tenant situated on the rental premises. The lease agreement was not recorded at this time.

On December 7, 1970, the Bank entered into a Security Agreement for General Inventory Loans with Suid. The agreement provided that all loans under this financing arrangement were secured by a security interest in all furniture, fixtures, equipment and stock relative to Suid's operation of the Worldwide Fashion Center. This agreement covered after-acquired property and secured future advances by the Bank. Pursuant to the agreement, the sum of $50,000.00 was advanced. Two weeks later, on December 21, 1970, the Bank filed with the Recorder of Deeds, a financing statement, together with the security agreement, describing the same property.

The next significant date is March 13, 1972, when Sunny Isle filed a financing statement and copy of the lease contract with the Recorder of Deeds, said statement covering the same property described in the lease agreement. Meanwhile, Suid had gone into arrears on the rent and on January 24, 1973, Sunny Isle filed a complaint for rent due in the sum of $41,601.25. On April 4, 1973, pursuant to the consent and stipulation of the parties, judgment was entered in favor of Sunny Isle against Suid in that amount, together with interest at the rate of 4% per annum.

When Suid failed to make the payments the store was closed by Sunny Isle and the inventory on the premises seized pursuant to the lease agreement. On March 6, 1975, plaintiff, the Chief Deputy Marshal of the Municipal Court, sold this inventory pursuant to a writ of execution obtained by Sunny Isle. Proceeds totaling approximately $16,000.00 were realized on the sale. Each defendant [making allowance for Sunny Isle's inartful pleading for judgment against the Bank] claims that it is entitled to the entire proceeds of sale. The Bank claims that a total of $32,693.71,

plus some uncounted interest, remains owing to it from Suid.

## II

### SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure summary judgment is appropriately granted only where all of the written submissions before the court show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". This, in my belief, is such a case.

■ Defendant Sunny Isle places itself in the unusual position of opposing the Bank's motion for summary judgment by arguing that there are genuine issues as to material facts yet to be resolved, but then raises such a motion itself, upon which it could only prevail if there were no genuine dispute as to the material facts. I cannot accept the apparent explanation that the facts needed to decide Sunny Isle's motion are not in dispute, while those pertinent to the Bank's motion are. The Court has reviewed in considerable detail all of the pleadings, affidavits and various memoranda. I conclude that all of the material facts are before the Court, that these facts are not in dispute, and that judgment can be entered as a matter of law.

## III

### WHICH PARTY IS ENTITLED TO THE PROCEEDS

The basic problem before this Court is to determine what type of interest each of the defendants had in the property of the Worldwide Fashion Center and subsequently in the proceeds of the sale of that property, and to establish the appropriate priority between those interests. Toward that end, the crucial issue is the applicability of the Uniform Commercial Code to this situation. If the Code applies, this becomes a matter of determining the type of interest each

party has, and then applying the Code's priority rules. If the Code is not applicable to these transactions, then we must look to the law outside of the Code for the answer.

▆ Section 9—104 of Title 11A of the Virgin Islands Code provides, "This article does not apply . . . (b) to a landlord's lien.". Thus, upon a superficial look, it would appear that the UCC does not deal with the relative priorities of a landlord's lien for rent as against a secured party with respect to collateral at the rented premises. The better and prevailing rule, however, is that the Code's exclusion refers only to statutory, nonconsensual landlord's liens. Where, as here, the lien was agreed to by the parties through a contract, the Code provisions should and do apply.

In Leckie Freeburn Coal Company v. Hamblin, 405 F.2d 1043 (6th Cir. 1969), the Sixth Circuit held that a lease granting a lien on the lessee's equipment to secure the payment of rent was governed by the Uniform Commercial Code. The court concluded that the Code's exclusion of landlord's liens applies only to those created by statute, and not by contract. Moreover, filing the lease in the real estate records did not effectuate a perfected security interest in the equipment under the Code.

Likewise, In re King Furniture City, Inc., 240 F.Supp. 453 (E.D. Ark. 1965) held that where a lease of premises gave the landlord a lien on the personal property of the tenant located on the premises to secure rent payments, this was a contractual lien to which the UCC applied, and not a statutory landlord's lien within the Code exclusion. Therefore, the Court concluded that it was necessary for the landlord to file a financing statement to perfect his security interest under Article 9.

The plaintiff cites In re Einhorn Bros., Inc., 272 F.2d 434 (3d Cir. 1959), in which the Third Circuit found a landlord's lien on the tenant's merchandise inventories to be superior to a prior perfected security interest. The court

279

remarked that since the Uniform Commercial Code does not apply to a landlord's lien, that the Code did not change existing Pennsylvania law on the subject. The Einhorn case, however, is distinguishable from the matter before this Court. The lien in Einhorn was a nonconsensual lien arising under a Pennsylvania statute. In the case sub judice an express contractual lien is involved. A consensual landlord's lien, one agreed to by the parties and not created by statute, is not excluded by the Code.

The next issue is to determine what type of interest each of the defendants had in the property of the Worldwide Fashion Center and subsequently in the proceeds of the sale. When the Bank filed its financing statement on December 21, 1970, it obtained a perfected security interest in all furniture, fixtures, equipment and stock relative to the operation of the Worldwide Fashion Center.

By filing the financing statement the Bank completed the final step necessary to achieve the status of a perfected security interest. Its security interest had "attached" prior to that date since pursuant to 11A V.I.C. § 9—204(1) there was an agreement that it attach, the Bank had given value, and the debtor had rights in the collateral. The security agreement covered, as it may, any after-acquired property of the debtor and secured future advances by the Bank. The filing of the financing statement under 11A V.I.C. § 9—302 completed the perfection of the Bank's security interest. It is significant that the Bank's financing statement covered not only the collateral of the debtor, but any proceeds of that collateral as well. Under 11A V.I.C. § 9—306(3)(a) a perfected security interest in collateral continues to be perfected in the proceeds, but ceases to be a perfected security interest after ten days unless a filed financing statement covering the original collateral also covers proceeds.

It can be argued that Sunny Isle had a security interest in the goods, wares, equipment, fixtures, furniture and

other personal property and effects of the tenant which attached on August 25, 1970, when the lease agreement was entered. You would say that the express contractual lien constituted the security agreement, that value was given in the rental of the premises, and that the tenant had rights in the collateral, satisfying all of the requirements for a security agreement to attach. Even so, Sunny Isle's security interest would not be perfected until it had filed a financing statement on March 13, 1972.

■ Thus, the relevant Code priority section becomes 11A V.I.C. § 9—312(5). It provides:

(5) In all cases not governed by other rules stated in this section . . . priority between conflicting security interests in the same collateral shall be determined as follows:

(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under Section 9—204 (1) and whether it attached before or after filing.

So, by reason of having filed its financing statement at an earlier date the Bank has the superior claim to the proceeds of the sale.

It should be noted that a security interest can be perfected by having the secured party take possession of the collateral without filing. See 11A V.I.C. § 9—305. Sunny Isle did not, however, take possession of the inventory on the premises until after a judgment was entered on April 4, 1973. Under 11A V.I.C. § 9—312(5)(b) where conflicting security interests are not both perfected by filing, the order of perfection becomes the relevant guide for determining priority. Again, the Bank should prevail since its interest was perfected in 1970 and Sunny Isle did not take possession until several years later.

Finally, with respect to Sunny Isle, it became a lien creditor as of the time it levied on the property by a writ of execution on March 6, 1975. 11A V.I.C. § 9—301(3). The

Bank, however, had a perfected security interest in the property of the Worldwide Fashion Center at that time. Therefore, the claim of Sunny Isle as a lien creditor is subordinated to that of the Bank. 11A V.I.C. § 9—301(1)(b).

This resolution of the conflicting interests is unaltered by the fact that the collateral of the Worldwide Fashion Center became proceeds of a Marshal's sale on March 16, 1975. As cited above, under 11A V.I.C. § 9—306(3)(a), since the Bank's financing statement also covers the proceeds of the collateral, their security interest remains continuously perfected. When read in connection with 11A V.I.C. § 9—312(6), which provides in part:

> For the purpose of the priority rules of the immediately preceding subsection, a continuously perfected security interest shall be treated at all times as if perfected by filing . . .,

it is clear that the priorities as determined above are not changed by reason of the sale of the collateral. The order of filing and order of perfection remain the same.

The amount remaining on the debt owed to the Bank by Worldwide Fashion Center is approximately double the amount of the proceeds realized on the Marshal's sale of the property. Having determined that the Bank's claim to these proceeds is superior to that of Sunny Isle, the Bank is thus entitled to the entire proceeds of the sale.

█ There is one remaining issue to which the Court must address itself. In its cross-claim against the Bank, Sunny Isle contends that even if the Bank is found to have had a security interest in the property of the Worldwide Fashion Center, that since this merchandise occupied space upon property belonging to Sunny Isle the Bank should be required to pay a reasonable rental for this use. I know of no proposition of law which supports such a claim. The Bank was not the owner of this property and hence responsible for the cost of storing it. Instead, the Bank possessed a security interest in the property, as did Sunny Isle itself.

Not under any stretch of the judicial imagination can it be said that the defendant Bank is responsible to Sunny Isle for the cost of storing property in which it had a security interest.

## ORDER

In accordance with the reasons stated in the foregoing Memorandum Opinion and Order, it is hereby

ORDERED, ADJUDGED and DECREED that:

1. The Bank of Nova Scotia's motion for summary judgment granting priority of its lien against that of defendant Sunny Isle be and the same is hereby GRANTED.

2. Sunny Isle's motion for summary judgment against defendant Bank of Nova Scotia be and the same is hereby DENIED.

3. The plaintiff, the Chief Deputy Marshal of the Municipal Court of the Virgin Islands, St. Croix Division, shall pay over to the Bank of Nova Scotia the entire proceeds of the sale and upon such payment, he shall be discharged from all liability thereto with respect to the alleged claim of Sunny Isle.