**THE BANK OF NOVA SCOTIA, Plaintiff**

**v.**

**FOUR WINDS PLAZA CORP., Defendant**

Civil No. ST-08-CV-458

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

February 15, 2012

 

CAROL ANN RICH, ESQ., Dudley, Rich, Davis, LLP, St. Thomas, USVI, *Counsel for Plaintiff.*

SHARON SCHOENLEBEN, ESQ. and ELCHANAN I. DULITZ, ESQ., St. John, USVI, *Counsel for Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(February 15, 2012)

Plaintiff Bank of Nova Scotia has moved for summary judgment under Counts I and II of its Complaint, demanding turnover of the proceeds from the sale of its collateral and damages for conversion of the collateral.[1] Defendant Four Winds Plaza Corp. has cross-moved for summary judgment, contending that the Bank's UCC lien is invalid and requesting past due rent for the storage of the collateral. Because the Court finds that there is no genuine issue of material fact that the Bank was a secured creditor under Article 9 of the Uniform Commercial Code at the time of the sale of the collateral, and that Four Winds had constructive and actual notice of the lien on the collateral at the time it sold the property, the Bank's Motion for Summary Judgment will be granted as to Count I. With respect to Count II, this Court finds that there is no genuine issue of material fact that the Bank was not the owner of the collateral at the time Four Winds sold the collateral. Four Winds, therefore, is not liable for conversion and the Court will deny the Bank's Motion for Summary Judgment as to Count II. This Court also finds that the equities favor an award of prejudgment interest for conversion damages at a rate identical to that provided by statute. Consequently, the Court will deny as moot Four Winds's Cross-Motion for Summary Judgment.

---

[1] Bank of Nova Scotia is represented by Carol Ann Rich, Esq., of Dudley Rich Davis LLP. Four Winds Plaza Corp. is represented by Sharon Schoenleben, Esq. and Elchanan I. Dulitz, Esq.

**UNDISPUTED FACTS**

The Bank and Caribbean Fitness, Inc. d/b/a America's Paradise Gym, as parties to an existing loan, executed a security agreement.[2] The security agreement covered America's Paradise's equipment and all after-acquired equipment ("collateral"). On March 3, 2004, the Bank filed a UCC-1 Financing Statement and Schedule A which described all present and future assets and equipment of America's Paradise.[3]

In July 2004, without executing a written lease, America's Paradise became a month-to-month tenant of Four Winds.[4] In 2007, America's Paradise defaulted on its obligations to the Bank under the loan agreement.[5,6] On April 17, 2007, Four Winds received the last partial rent payment from America's Paradise.[7] In July of 2007, America's Paradise defaulted on its obligations under the tenancy agreement with Four Winds and vacated the commercial space, leaving behind the collateral.[8]

On October 26, 2007, the Bank provided written notice to Four Winds of the loan agreement between the Bank and America's Paradise, that the loan was secured by a security agreement perfected by a UCC-1 Financing Statement, that America's Paradise had defaulted under the loan agreement and that the Bank intended to remove the equipment from Four Winds's premises. In a letter dated October 29, 2007, Four Winds responded that it had no record of the Bank's lien, and that Four Winds's landlord's lien took precedence over the Bank's lien.[9] In the same letter, Four Winds claimed that America's Paradise owed it $103,314.86 for past due rent. By a letter dated October 30, 2007, the Bank informed Four Winds that the Virgin Islands had no statutory provision for a landlord's lien, reiterated that it had a first priority lien against America's Paradise's

---

[2] (Compl. ¶ 5); Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 1.

[3] Pl.'s Mot. Summ. J. ¶ 4; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 1.

[4] Pl.'s Mot. Summ. J. ¶ 5 & Ex. B; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 3.

[5] Pl.'s Mot. Summ. J. ¶ 6; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 6.

[6] On July 25, 2011, the Bank filed an affidavit of Raymond V. Henry, Senior Account Manager, stating that when America's Paradise defaulted on its obligations under the loan agreement in 2007, it owed $295,749.90 in principal.

[7] Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 7.

[8] *Id.*

[9] Pl.'s Mot. Summ. J. Ex. C; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 13.

collateral and also furnished copies of the recorded UCC-1 Financing Statement.[10]

On February 22, 2008, Four Winds sold the collateral for $75,000.00.[11] On April 9, 2008, the Bank and America's Paradise executed a General Bill of Sale and Assignment, whereby America's Paradise transferred and assigned to the Bank all of its rights, title, and interest in all of the collateral covered by the UCC lien.[12] The General Bill of Sale expressly authorized the Bank to retrieve the collateral.[13] On July 17, 2008, the Bank demanded from Four Winds the money from the sale of the equipment.[14] The Bank filed a Motion for Summary Judgment on April 24, 2009. Four Winds filed a Cross-Motion for Summary Judgment on May 15, 2009.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Summary Judgment will be granted if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[16] A fact is material only if its existence or non-existence will affect the outcome of a lawsuit under applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[17] The role of the court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of

---

[10] Pl.'s Mot. Summ. J. ¶ 9, Ex. A-4.

[11] Pl.'s Mot. Summ. J. ¶ 11; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 15.

[12] Pl.'s Mot. Summ. J. ¶ 10, Ex. A-5.

[13] *Id.*

[14] Pl.'s Mot Summ. J. ¶ 12; Def.'s Resp. Pl.'s Mot. Summ. J. ¶ 18.

[15] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Skopbank v. Allen-Williams Corp.*, 7 F. Supp. 2d 601, 605, 39 V.I. 220, 227 (D.V.I. 1998).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[17] *Id.*

fact remains in dispute.[18] The nonmoving party receives "the benefit of all reasonable doubts and inferences drawn from the underlying facts."[19]

## II. THE BANK PROPERLY PERFECTED ITS SECURITY INTEREST UNDER THE VIRGIN ISLANDS CODE

Crucial to the decision on the Motion for Summary Judgment is whether, on March 3, 2004, the Bank properly recorded the UCC-1 Financing Statement. Title 11A of the Virgin Islands Code incorporates the Uniform Commercial Code and governs perfection of security interests. Under the Virgin Islands Code, a properly perfected financing statement is one that is filed in the Office of the Lieutenant Governor;[20] and the financing statement is sufficient if it provides the name of the secured party, the name of the debtor and identifies the collateral covered by the financing statement.[21]

■ The Bank argues that it properly perfected the UCC-1 Financing Statement and Schedule A and, thus, has secured a lien on the collateral. Four Winds states that the Bank's UCC-1 Financing Statement is defective because it fails to identify America's Paradise Gym as the debtor and, instead, names Caribbean Fitness, Inc. The Virgin Islands Code states that: "[i]f the debtor is an organization, the financing statement must have the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized."[22] The parties do not dispute that the records at the Recorder of Deeds, Division of Corporations and Trademarks, reflect that the legal name of the debtor indicated on the public record is Caribbean Fitness, Inc., and not America's Paradise Gym. Nonetheless, "[a] financing statement is not rendered ineffective by the absence of a trade name or other name of the debtor."[23] This Court, therefore, finds that the Bank properly identified Caribbean Fitness, Inc., as the debtor and the

---

[18] *Suid v. Phoenix Fire & Marine Ins. Co., Ltd.,* 26 V.I. 223, 225 (D.V.I. 1991).

[19] *Aristide v. United Dominion Constructors, Inc.,* 30 V.I. 224, 226 (D.V.I. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[20] V.I. CODE ANN. tit. 11A, § 9-501(b) (2003).

[21] 11A V.I.C. § 9-502(b).

[22] *Id.* § 9-503(a)(1).

[23] *Id.* § 9-503(b)(1).

absence of Caribbean Fitness, Inc.'s trade name, America's Paradise Gym, does not render the UCC-1 Financing Statement ineffective.

In further support of its contention that the Bank fails to perfect the lien, Four Winds argues that Schedule A, attached to the UCC-1 Financing Statement, failed to adequately list the subject collateral as required under the Virgin Islands Code. In contrast, the Bank states that Schedule A meets the level of detail required by Sections 9-504 and 9-108 of title 11 of the Virgin Islands Code.

Section 9-504 states: "A financing statement sufficiently indicates the collateral that it covers if the financing statement provides: (1) a description of the collateral pursuant to [section] 9-108; or (2) an indication that the financing statement covers all assets or all personal property."[24] Section 9-108 states, in relevant part, that "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described."[25]

█ Schedule A specifically identifies "all equipment; all [ ] attachments and other additions to, substitutes for, replacements for, improvements to and returns of such Inventory . . . ."[26] Thus, this Court finds that Schedule A reasonably describes the collateral covered, and that it is sufficient under the Virgin Islands Code.

Since the Bank properly identified Caribbean Fitness, Inc., as the debtor in the UCC-1 Financing Statement, reasonably described the collateral in Schedule A, and filed these documents in the Lieutenant Governor's Office, this Court finds that the Bank perfected its security interest and thus, on March 3, 2004, had a security interest in the collateral.

### III. FOUR WINDS'S LANDLORD'S LIEN ON THE COLLATERAL PROPERTY IS NOT RECOGNIZED UNDER THE VIRGIN ISLANDS LAW

█ Four Winds asserts that it has a landlord's lien over the collateral property, which has priority over the Bank's lien. The Court notes that

---

[24] 11A V.I.C. § 9-504.

[25] 11A V.I.C. § 9-108. Section 9-108 also provides examples of reasonable identification, such as the specific listing, category, quantity, or any other method, if the identity of the collateral is objectively determinable.

[26] (Compl. Ex. 1.)

Four Winds does not cite any case law, statutes or other authority to support its contention that it has a landlord's lien. Similarly, Four Winds has not furnished evidence to the Court that it previously recorded a landlord's lien, and Four Winds and Caribbean Fitness, Inc., did not execute a written lease that includes a landlord's lien. Moreover, the Court notes that Virgin Islands law does not recognize a landlord's lien. The Court, therefore, finds that Four Winds does not have a landlord's lien on the collateral property.

## IV. THE BANK, AS A SECURED CREDITOR, IS ENTITLED TO THE PROCEEDS FROM THE SALE OF THE COLLATERAL

The Bank cites Sections 9-607, 9-315 and 9-607 of Title 11A of the Virgin Islands Code to support its contention that it is entitled to the proceeds from the sale of the collateral and that Four Winds is liable to the Bank for $75,000.00. In opposition, Four Winds asserts that the Bank is not entitled to the sale proceeds because the Bank's ten month delay in taking possession of the collateral was not commercially reasonable. Thus, Four Winds contends that the sale of the collateral was justified. Four Winds also states that it retained the sale proceeds to mitigate the damages it suffered by its inability to lease the commercial space. The Court disagrees with Four Winds.

The Virgin Islands Code states that "[a] filed financing statement remains effective with respect to collateral that is sold, exchanged, leased, licensed, or otherwise disposed of and in which a security interest or agricultural lien continues, even if the secured party knows of or consents to the disposition."[27] Further, "in the case of the unauthorized sale of the collateral, the perfected security interest of the creditor continues in both the collateral and in the identifiable proceeds of the sale."[28] The Court concludes that Four Winds conducted an unauthorized sale, since Four Winds knew the collateral had not been abandoned before the sale and it did not have the Bank's consent to sell the collateral. Thus, the Court finds

---

[27] 11A V.I.C. § 9-507(a).
[28] *United States v. Hughes*, 340 F. Supp. 539 (N.D. Miss. 1972); *United States v. Greenwich Mill & Elevator Co.*, 291 F. Supp. 609 (N.D. Ohio 1968).

that the Bank's lien attaches to the proceeds from the sale of the collateral.[29]

## V. FOUR WINDS IS NOT ENTITLED TO RENT FOR STORAGE OF THE COLLATERAL

In its Cross-Motion for Summary Judgment, Four Winds argues that the Bank failed to act in a commercially reasonable manner by permitting the collateral to sit in Four Winds's commercial space without disposing or taking possession of the collateral upon America's Paradise's default under the loan agreement. Thus, Four Winds contends that it is entitled to ten months of rent from the Bank for storage of the collateral. Four Winds states that this period of time runs from April 2007 when America's Paradise defaulted under the month-to-month tenancy to February 2008 when Four Winds sold the collateral. The Bank counters that, as a secured creditor with a perfected security interest, it did not have a duty to possess or dispose of the collateral within any specified time period. The Bank also argues that it did not have an actual or constructive ownership interest in the collateral during the ten-month period.

Four Winds cites *Abramson v. Small Business Development Agency,*[30] in which the Virgin Islands District Court held that a secured party's conduct in disposing of collateral must be reasonable. Four Winds's reliance on this case is misplaced, however, because the District Court's holding in *Abramson* was based in part on the fact that the secured party had possession of the collateral. In contrast, in this matter, the Bank did not have possession of the collateral. In addition, the duty to act in a commercially reasonable manner does not arise until after a secured creditor exercises its right to take possession of the collateral.[31] During the months from April 2007 to February 2008, the Bank had not exercised its right to possess the collateral and, thus, it did not have a duty to dispose of the collateral within a particular time period.[32]

The Court, therefore, agrees with the Bank and finds that the Bank was merely a secured creditor and not an owner of the collateral before

---

[29] *See Perez v. Bank of Nova Scotia,* 12 V.I. 274, 280 (D.V.I. 1975) (interpreting 11A V.I.C. and holding that "a perfected security interest in collateral continues to be perfected in the proceeds").

[30] 20 V.I. 167 (D.V.I. 1983).

[31] 11A V.I.C. § 9-601.

[32] *Id.* at § 9-610.

Four Winds sold the collateral and, thus, it did not have a duty to act in a commercially reasonable manner in disposing of the collateral. The Court notes that the alleged delay between April and July 2007 cannot be attributed to the Bank since America's Paradise had not defaulted on the lease or vacated the premises. The Court finds that the delay between July 2007 and October 2007, a mere 3 months, was commercially reasonable. The delay from October 2007 to the date of the sale of the collateral in February 2008 cannot be attributed to the Bank since Four Winds had asserted a landlord's lien and refused to turn over the collateral. Hence, the Bank is not responsible for the cost of storing the collateral in the commercial space.[33] It is reasonable to believe that had the Bank immediately notified Fours Winds of its interest in the collateral, Four Winds would have still refused to turn it over, claiming a landlord's lien on the collateral.

## VI. FOUR WINDS IS NOT LIABLE FOR CONVERSION

The Bank seeks damages from Four Winds for conversion based on the undisputed fact that Four Winds sold the collateral to a third party. The Bank states that Four Winds, after having acquired actual notice of the Bank's lien on the collateral, sold the collateral without prior notice and interfered with the Bank's rights. In contrast, Four Winds contends that America's Paradise abandoned the collateral when it defaulted under the lease and left the commercial space. As abandoned collateral, Four Winds claims that its decision to sell the property was privileged, that the Bank's rights to the collateral were no greater than America's Paradise's and that the Bank's rights had been foreclosed. The parties do not dispute that the Bank did not consent to the sale of the collateral.

 Conversion is "an intentional exercise of dominion or control over the property of another in a manner inconsistent with the owner's rights." The action for conversion grew from the old common law action of trover, which "originated as a remedy against the finder of lost goods who refused to return them to the *owner* but instead 'converted' them to his

---

[33] *See id.* at 281 (holding that a secured creditor was not an owner of the equipment, and, thus, was not responsible for the costs of storing equipment on a defendant landlord's commercial space).

own use."[34] The Court notes that the Bank has conceded, in its argument against Four Winds's contention that it is entitled to rent for the storage of the collateral, that the Bank did not have an actual or constructive ownership interest in the collateral. The Bank did not acquire an ownership right to the collateral until April 9, 2008, the date that America's Paradise executed the General Bill of Sale and Assignment transferring its ownership rights to the Bank.[35] Thus, the Bank became an owner of the collateral after Four Winds sold the collateral. The Court opines that had the Bank had title to the collateral it would not have sought the execution of the General Bill of Sale and Assignment.

■ The Court finds that the Bank merely had a possessory right and not an ownership right over the collateral. Section 9-609 of the Code provides that "after default, a secured party may take possession of the collateral."[36] Thus, after Caribbean Fitness, Inc., defaulted on the loan, the Bank had an immediate possessory right to the collateral.[37] One's possessory right in property does not confer ownership and title in the property. The Court finds that in order to maintain an action for conversion, a plaintiff must have more than the right to possess the property in issue. The Court, therefore, will deny the Bank's Motion for Summary Judgment with respect to conversion.

## VII. THE BANK IS ENTITLED TO PREJUDGMENT INTEREST ON THE PROCEEDS FROM THE SALE OF THE COLLATERAL

■ The grant or denial of prejudgment interest remains within the sound discretion of this Court.[38] The assessment of prejudgment interest is permissible where the interests of justice so demand.[39] In support of the Bank's assertion that it is entitled to prejudgment interest at a rate of nine

---

[34] RESTATEMENT (SECOND) OF TORTS § 222a cmt. a. *See also* V.I. CODE ANN. tit. 1, § 4 (1995) ("The rules of the common law, as expressed in the restatements of law . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.").

[35] Pl.'s Mot. Summ. J., Ex. A-5.

[36] 11A V.I.C. § 9-609.

[37] *See United States v. Sommerville*, 324 F.2d 712, 714 (3d Cir. 1963) (finding a secured creditor's immediate right to possess chattel after debtor's default).

[38] *Dewerd v. Bushfield*, 993 F. Supp. 365, 38 V.I. 202, 206 (D.V.I. App. 1998).

[39] RESTATEMENT (SECOND) OF TORTS § 931(1)(b) (1979); *Antilles Ins., Inc. v. James*, 30 V.I. 230, 256 (D.V.I. App. Div. 1994).

percent on the proceeds from the sale of the collateral, it cites title 11, section 951(a) of the Virgin Islands Code.[40] Four Winds contends that the rate of interest should be four percent and directs the Court's attention to title 5, section 426 of the Virgin Islands Code.[41]

 Four Winds's contention is misplaced because section 426 governs the "interest on judgments and decrees for the payment of money . . . ."[42] At this stage, a judgment has not been entered. Thus, the Court will now turn to whether the Bank is entitled to interest at the rate of nine percent as provided in section 951(a).

 Section 951(a) governs the nine percent legal rate of interest on, *inter alia*, "all monies which have become due."[43] "[H]owever [ ] section 951(a) is not a proper mechanism for seeking prejudgment interest arising from a non-contractual tort" because the language does not implicate "the assessment of damages against a tortfeasor for injuries committed upon an unwilling victim."[44] The Bank, therefore, is not entitled to prejudgment interest under section 951(a) because the damages arise from a non-contractual action, namely, the sale of the collateral. Nonetheless, based on case law and common law, the Bank is entitled to prejudgment interest on the award for damages as a matter of tort law. The Bank is entitled to interest upon the amount found due:

> (a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, from the time adopted for their valuation to the time of judgment, or (b) . . . for other harms to pecuniary interests from the time of the accrual of the cause of action to the time of judgment, if the payment of interest is required to avoid an injustice.[45]

The Court will, therefore, grant prejudgment interest on the proceeds from the sale of the collateral at a rate of nine percent because "it does not

---

[40] V.I. CODE ANN. tit. 11, § 951(a)(1) (2006).

[41] V.I. CODE ANN. tit. 5, § 426 (1997).

[42] 5 V.I.C. § 426(a).

[43] *Dewerd v. Bushfield*, 993 F. Supp. 365, 38 V.I. 202, 206 (D.V.I. App. Div. 1998).

[44] *Bookworm, Inc. v. Tirado*, 44 V.I. 300, 305 (Terr. Ct. 2002) (discussing the imposition of prejudgment interest in cases involving injury to property).

[45] *Id.* at 306 (citing 1 V.I.C. § 4 and RESTATEMENT (SECOND) OF TORTS § 913 (1979)).

offend the interests of justice to impose an identical rate."[46] The Court opines that the prejudgment interest will accrue from the date Four Winds refused to turn over the proceeds from the sale of the collateral, which was the crux of the Bank's claim. The record, however, does not reflect the date of Four Winds's refusal. Thus, for the calculation of prejudgment interest, the Court will use July 17, 2008, the date that the Bank demanded the sale proceeds. Accordingly, prejudgment interest will accrue from July 17, 2008, the date of the sale, through the date of judgment.

■ The Court will also assess punitive damages against Four Winds for its willful conduct and bad faith in selling the collateral, without the Bank's consent, and thereafter withholding the proceeds from the sale of the collateral when it had notice of the Bank's secured interest.[47]

## CONCLUSION

Upon a close reading of the Virgin Islands Code, this Court finds that the Bank, having perfected its UCC-1 Financing Statement, is a secured creditor and, as such, is entitled to the proceeds from the sale of the collateral. Because the Bank did not own the collateral prior to the sale thereof, Four Winds is not entitled to rent for the storage of the collateral, and it is not liable for conversion. The Court will, therefore, grant the Motion for Summary Judgment with respect to Four Winds's lack of entitlement to rent for storage of the collateral and will deny the Motion for Summary Judgment as to conversion. Similarly, the Court will deny as moot the Cross-Motion for Summary Judgment. This Court also finds that the equities favor an award of prejudgment interest with respect to the proceeds from the sale of the collateral at an identical rate provided by a provision of the Virgin Islands Code. In addition, the Court will assess punitive damages against Four Winds for its wrongful conduct. An appropriate judgment will follow.

---

[46] Id.

[47] Clarke v. Abramson, No. Civ. 2004-111, 2007 U.S. Dist. LEXIS 78814, at *8 (D.V.I. Oct. 24, 2007) (citing RESTATEMENT (SECOND) OF TORTS § 908).