**GEORGE DEWERD, Appellant**

**v.**

**CHARLES BUSHFIELD, Appellee**

D.C. Civ. App. No. 1996-159

T.C. Civ. No. 635-1989

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 30, 1998

GEORGE ETHRIDGE, ESQ., St. Thomas, U.S.V.I., for *Appellant*

MICHAEL C. DUNSTON, ESQ., St. Thomas, U.S.V.I., for *Appellee*

FINCH, BROTMAN, and ANDREWS, *Judges*

## OPINION OF THE COURT

PER CURIAM

Appellant Charles Bushfield ("Bushfield") appeals the decision of the Territorial Court ("trial court") awarding Appellee George DeWerd ("DeWerd") prejudgment interest. For the reasons stated herein the trial court's decision is affirmed.

### I. Facts

On February 5, 1981, Bushfield entered into a contract to purchase a piece of property ("Property")[1] for $550,000 from DeWerd.[2] Bushfield paid $300,000 at the closing and executed a Purchase Money Mortgage Note ("Note") that required him to pay the additional $250,000 over time.[3] The Note was secured by a First Priority Purchase Money Mortgage ("Mortgage") on the land.[4]

This dispute has centered on the terms of the Note and Mortgage. Since Bushfield planned to subdivide the property, the Note contained special payment terms. The Note provided that Bushfield was to pay:

> the sum of TWO HUNDRED FIFTY THOUSAND DOL-
> LARS ($250,000.00), which includes principal and
> precalculated interest at the rate of nine percent (9%) per
> annum. Payments of said principal and interest shall be

---

[1] 2E-51 Estate Caret Bay.

[2] DeWerd originally conveyed the Property to Palm Beach Development Corporation by warranty deed. When Palm Beach filed for corporate dissolution, David Jones was appointed as its receiver. Jones conveyed the Property to Bushfield.

[3] The Contract For Sale of Realty shows that the original terms of sale required Bushfield to pay $250,000 at the closing and the $300,000 balance over time. The parties later modified these price terms.

[4] Jones assigned the Mortgage and Note to DeWerd.

made in ten (10) equal annual installments of a minimum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) each commencing one (1) year from the date hereof and on each anniversary date of this note until paid in full. Further, the undersigned maker of this note intends to develop and subdivide the real property subject to the accompanying First Priority Purchase Money Mortgage . . . . The maker agrees to pay the payee at the closing of any sale of such subdivided lots or parcels fifty percent (50%) of the gross selling price of such lots or parcels. The TWENTY FIVE THOUSAND DOLLARS ($25,000.00) annual installment referred to above shall be only the minimum amount payable per annum on this mortgage note. All such aforedescribed payments, whether from the sale of lots and parcels or otherwise when paid to the payee shall be subtracted from the balance due on this note until its indebtedness is paid in full.

*See* Note at 1. The Mortgage also contained similar language. Therefore, under the terms of the Note and Mortgage, Bushfield was to pay DeWerd each year the greater of either 50% of the gross selling price ("50% payment") of all lots sold or $25,000. In addition, the Mortgage mandated that DeWerd release a lot from the mortgage ("partial release") after he received the 50% payment pertaining to that lot.

The Mortgage provided that Bushfield would be in "default" if he failed to pay the sums due under the terms of the Note within thirty days of their due date. *See* Mortgage at 4. The Mortgage further provided that, where default occurred and was not remedied, DeWerd had the option to accelerate the payment of the loan by "declaring the whole of the sum evidenced by the [Note and Mortgage] to become immediately due and payable." *Id.*

Between 1982 and 1985, Bushfield did not sell any lots and made the expected annual payments of $25,000. Then, between November 10, 1986 and August 7, 1987, he sold his first ten lots. He continued, however, to make annual payments of $25,000 to DeWerd, and did not make the 50% payments that the Note required him to make. Despite Bushfield's failure to make the

required 50% payments, DeWerd still delivered to him the partial releases in order to allow the individual lot closings to occur.[5]

Later, it was determined that the partial releases were not recordable since they had been improperly executed. On October 27, 1988, DeWerd executed and delivered a composite release covering all seventeen lots. Bushfield testified that he gave DeWerd an advance payment on a future annual $25,000 installment in consideration for this composite release.

In April 1989, the U.S. Marshal served Bushfield with a Writ of Garnishment against DeWerd. DeWerd allegedly demanded that Bushfield ignore the Writ and pay all money due to him. After learning that Bushfield had obeyed the Writ, DeWerd filed suit on August 1, 1989, attempting to enforce the 50% payment provision.

Both parties moved for summary judgment, and a hearing was conducted on June 28, 1993. The trial court granted Bushfield's motion for partial summary judgment, concluding that DeWerd's claims were barred by laches. The Appellate Division, however, vacated its grant of summary judgment and remanded for further proceedings after concluding that the lower court had abused its discretion.

On August 21, 1995, the Honorable Ishmael A. Meyers conducted a bench trial. On July 2, 1996, he entered judgment in favor of DeWerd for $32,213.49. This amount represented the prejudgment interest, at the legal rate of 9% per annum, on one half of the sales price of each lot sold between November 10, 1986 and August 7, 1987,[6] from the respective dates of each lot sale until the date of the judgment.

## II. Discussion

Bushfield raises three issues in this appeal: whether the trial court erred (1) in awarding prejudgment interest on the 50% payments; (2) in finding that the Mortgage did not contain any language requiring DeWerd to give Bushfield notice of default; and

---

[5] DeWerd argued at trial that he was in no position but to execute the partial releases. He apparently believed that if the releases were not executed, Bushfield could not sell the property, and he would not be paid.

[6] The parties calculated that August 7, 1996 was the day that DeWerd would have been paid in full had Bushfield made the 50% payments when required.

205

(3) in finding that DeWerd did not waive his right to the 50% payments.

*A. Prejudgment Interest Award on the 50% Payments*

■We review a trial court's decision to grant prejudgment interest for abuse of discretion. *United States v. American Ins. Co.,* 18 F.3d 1104, 1108 (3d Cir. 1994). In this case, the trial court exercised its discretion to award DeWerd prejudgment interest on the 50% payments "at the legal rate of nine percent (9%) per annum." Findings of Fact and Conclusions of Law ("FFCL") at 5. Title 11 V.I.C. § 951(a) provides that:

> The [legal] rate of interest shall be nine (9%) per centum [sic] per annum on-
>
> (1) all monies which have become due;
>
> (2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied;
>
> (3) money due upon the settlement of matured accounts from the day the balance is ascertained; and
>
> (4) money due or to become due where there is a contract and no rate is specified.

11 V.I.C. § 951(a). Although the trial court did not explicitly state the statutory grounds for its prejudgment interest award, it apparently relied on § 951(a)(4). The court found that the note was "an enforceable contract representing the principal and interest to be paid." FFCL at 4. It also found that each failure by Bushfield to make the requisite 50% payment constituted a breach of contract. *Id.* The court proceeded to grant prejudgment interest at the legal rate because (1) there was a contract; (2) there was money due under the contract that was not paid; and (3) the contract did not specify a rate of interest for past due funds.

Bushfield contends that the trial court abused its discretion in awarding DeWerd prejudgment interest. He argues that the award contravened the parties' intentions that the acceleration of the payment of the loan act as the sole remedy in case of default.

206

Bushfield provides three bases for this argument: (1) the Note and Mortgage provided for only one remedy in case of default — acceleration; (2) there was no provision in the Note or Mortgage for a late penalty or interest charge on the 50% payments although such provisions were common in other mortgages; and (3) the Note already included precalculated interest at a rate of nine percent and, therefore, awarding DeWerd further interest would mean assessing Bushfield "double interest" on his indebtedness.

■ Bushfield's argument fails for several reasons. Most importantly, the Note states that:

> The holder or holders of this note are entitled to the benefits of such mortgage and contract and may enforce the agreements contained therein and may exercise the remedies which are provided for thereby *or otherwise available in respect thereto.*

*See* Note at 2 (emphasis added). The Note explicitly provides that DeWerd could seek other remedies for default in addition to those listed in Mortgage and the Note. Furthermore, given this direct evidence that the parties' did not intend to limit themselves to the remedies provided in the Mortgage and Note, the fact that neither document explicitly provided for any additional remedies, such as a late penalty or interest charge, in case of default is insignificant.

Bushfield also asserts that awarding prejudgment interest would contravene the parties intent because it leads to his being unfairly charged "double interest" on the principal of the Note. He contends that he will be charged "double interest" because he would have to pay "interest upon an amount which already contained pre-calculated interest."

Bushfield's final basis for his argument is also without merit. Awarding prejudgment interest serves "to compensate prevailing parties for the true costs of money damages incurred." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992) (*quoting Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)). The fact that the Note already contained precalculated interest is immaterial. If Bushfield had made his 50% payments when he was required to, DeWerd would have received full

payment of the amount due under the Note at an earlier date.[7] He then would have been able to earn a profit from the use of this money. Therefore, we do not look at the situation as requiring Bushfield to pay "double interest" on the principal of the loan. Instead, we look at the situation as requiring him to make two separate interest payments: (1) a precalculated interest payment on the loan and (2) a prejudgment interest payment to compensate DeWerd for the loss of the use of his money when Bushfield failed to make his payments in a timely manner.

### B. Requirement to Give Notice of Default

■ Bushfield also argues that the trial court erred in concluding that neither the Mortgage nor the Note contains language requiring DeWerd to give notice of default in order to avail himself of a remedy. The trial court's conclusion is well supported by the language in the Mortgage which states that: "mortgagor hereby specifically waives . . . all notices not herein elsewhere specifically required, of Mortgagor's default or of Mortgagor's exercise, or election to exercise, any option under this mortgage."

Bushfield, nevertheless, provides the following language from the Mortgage in support of his argument:

> That in case one or more of the following "events of default" shall happen and shall not have been remedied, the Mortgagee at his option may declare the whole of the sum . . . to become immediately due and payable.

*See Mortgage* at 4. He contends that, in order to utilize the acceleration remedy, the language in the Mortgage required a "declaration" by DeWerd that he was exercising the remedy in response to Bushfield's default. Bushfield equates this "declaration" requirement to a requirement to give a notice of default.

Bushfield's argument fails since it relies on the assumption that acceleration was the sole remedy for default available to DeWerd. Only if we were to assume that acceleration was DeWerd's sole remedy would the Mortgage require him to "declare" Bushfield in

---

[7] The fact that Bushfield complied with the minimum payment schedule, which factored in a nine percent (9%) interest rate, is also immaterial since the parties anticipated paying a higher effective interest rate if the sales of the subdivisions went well.

208

default in order to avail himself of a remedy. However, since we have already concluded that DeWerd could seek other remedies under the Mortgage and the Note, we must, therefore, agree with the trial court's conclusion that DeWerd was not required to give Bushfield notice of default.

## C. Waiver of Right to Receive the 50% Payments

■■ Bushfield's final argument is that the trial court erred in finding that DeWerd did not waive his right to the 50% payments. "A waiver is the intentional relinquishment of a known right." *Brandy v. Brandy*, 21 V.I.C. 267, 272 (Terr. Ct. 1985). "Waiver is a matter of fact to be shown by the evidence. It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom." *Gaffney v. Virgin Islands Prod. Corp.*, 1930 U.S. Dist. LEXIS 1122, 1 V.I. 283, 296 (1930). We review the trial court's factual finding for clear error. *Government of the Virgin Islands v. Charles*, 33 V.I. 361, 72 F.3d 401, 404 (3d Cir. 1995).

Bushfield presents substantial evidence to support his argument. He cites DeWerd's (1) failure to demand the 50% payments before executing and delivering the partial releases; (2) failure to demand the 50% payments before executing and delivering the composite release; (3) signing the composite release in consideration for an advance payment on a future annual installment; (4) failure to demand the 50% payments in the years following his signing of the composite; (5) education and experience; and (6) requesting the 50% payments only after getting in a disagreement with Bushfield.

■ Still, we can not say that the trial court's finding was clearly erroneous. Most significantly, the Mortgage states:

The rights and remedies of Mortgagee as provided herein, or in said note, and the warranties therein contained, shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of the Mortgagee and may be exercised as often as occasion therefore shall occur; and *the failure to exercise any such right or remedy shall in no event be constructed as a waiver or release of the same.*

209

*See Mortgage* at 3 (emphasis added). Therefore, the clear language of the Mortgage dictates that DeWerd's inaction was not to be construed as a waiver of his rights. Furthermore, DeWerd testified at trial that he did not intend to waive his rights when he executed the releases. In fact, he testified that he believed that he would receive his 50% payments only if he executed the releases in order to allow the individual lot closings to take place. We find that this evidence provides a sufficient factual basis from which the trial court could base its findings.

## CONCLUSION

Bushfield has failed to show that the trial court abused its discretion in awarding DeWerd prejudgment interest. He has also failed to show that the trial court's conclusion that DeWerd did not waive his right to the 50% payments was clearly erroneous. An appropriate order follows.

DATED: January 30, 1998.

## ORDER OF THE COURT

AND NOW, this 26th day of January, 1998 having considered the arguments and submissions of the parties; and for the season set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the July 2, 1996 ruling of the Territorial Court is AFFIRMED.