**BOOKWORM, INC., Plaintiff**

v.

**ALVERN TIRADO and MICHAEL UNDERWOOD, Defendants**

BOOKWORM, INC. v. TIRADO

Civil No. 53811997

Territorial Court for the Virgin Islands

Division of St. Thomas & St. John

July 1, 2002

■■■■■■■■

ELLEN G. DONOVAN, ESQ., Christiansted, St. Croix, V.I., *Attorney for Plaintiff*

ALVERN TIRADO, Frederiksted, St. Croix, V.I., *Pro Se*

HODGE, *Judge*

## MEMORANDUM OPINION

### (July 1, 2002)

Before the Court is Plaintiff's "Renewed Motion for Partial Summary Judgment," pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff, having prevailed in part on a previous motion for summary judgment with respect to the merits of this case seeks partial summary judgment solely on the issue of damages. Because (1) Plaintiff has demonstrated an absence of material facts in dispute with respect to damages, and (2) Plaintiff is entitled to prejudgment interest for injury to its pecuniary interest in land caused by Defendant Tirado, Plaintiff's motion is GRANTED.

## FACTS

In a previous order granting partial summary judgment in favor of Plaintiff, this Court set forth the history of this case:

Bookworm, Inc., ("Bookworm") is the owner of several parcels of land, including Plot 10, Estate Little La Grange, St. Croix, Virgin Islands. In 1996, Bookworm subdivided Plot 10 into several smaller plots, including Plots 233, 234, and 235. [*Pro se* d]efendant [Alvern] Tirado ["Tirado"] owns Plot 107, which abuts Road Plot 108, a road that serves as an access to Bookworm's Plot 10.

Sometime in 1995 a building was constructed on Plot 107, which encroached onto the road and blocked access to Bookworm's property. Nonetheless, on February 2, 1996, Bookworm received an offer to purchase Plot 235 from John D. Simmons for the sum of $45,000.00. The offer was for a cash sale, with a closing to take place within thirty days. The closing was extended by agreement of the parties and was scheduled for March 6, 1996. Because of an encounter with [Tirado] and because of

---

[1] Made applicable to this Court through Rule 7 of the Rules Governing the Territorial Court of the Virgin Islands.

the encroachments onto the access road, Simmons canceled the sale. Bookworm did not receive another offer to purchase Plot 235 until May 3, 1999, when Victoria Snyder executed an installment contract for the sum of $50,000.00.

(Mem. & Order of Mar. 22, 2002, at 1-2) (citations omitted).[2] This Court ultimately granted summary judgment in favor of Bookworm, concluding that Tirado's cumulative encroachments onto the access road amounted to a private nuisance. (*Id.* at 6-7.) The Court also found that Tirado had filed an improper *lis pendens* against Plots 233, 234, and 235, (*id.* at 3-4, 8), which apparently thwarted Bookworm's attempted sale of Plot 233 to Rhonda Hospedales, (Pl.'s Renewal of Mot. to Strike *Lis Pendens, etc.,* ¶¶6-7 & ex. A (Cohen aff.) & ex. B (Hospedales' Offer to Purchase)). Bookworm's motion for summary judgment with respect to damages, however, was denied because, although Bookworm had mitigated its damages through the sale of Plot 235 to Snyder, the record was not sufficiently developed for this Court to find liquidated damages as a matter of law. (*Id.* at 7-8.) After further proceedings not relevant here,, this matter was set for jury trial solely on the issue of damages. (Order of Apr. 17, 2002.) Bookworm subsequently filed the instant motion.

## DISCUSSION

In its Renewed Motion for Partial Summary Judgment, Bookworm contends that, absent Tirado's interference, it would have received $39,600 in net proceeds from the aborted sale of Plot 235 to Simmons in March 1996. (Pl.'s Renewed Mot. for Partial Summ. J. at 1-2.) Bookworm also avers that, in May 1999, it received $47,500 in net proceeds from the completed Snyder sale, resulting in a positive difference of $7,900. (*Id.* at 1-2.) Bookworm calculates that, due to Tirado's interference, it lost $11,298 on the net proceeds of the Simmons sale between March 1996 and May 1999, computed at a rate of 9% per year. (*Id.* at 2.) Bookworm argues that it is entitled to an interest rate of 9% under the provisions of V.I. CODE ANN. tit. 11, § 951, as either (1) monies that would have become due, or (2) money to become due where

---

[2] At the time of the Simmons sale, Tirado's encroachment onto the access road was limited to a pile of debris that was designed to block vehicular access to Plot 235. (Pl.'s Mot. for Summ. J. App at 25.)

there is a contract and no rate specified. (*Id.*) Bookworm contends that deducting $7,900—which is the difference between the net proceeds from the Snyder and the failed Simmons sales from $11,298—which is the amount of interest that Bookworm claims it lost on the abandoned Simmons sale due to the acts of Tirado—results in liquidated damages of $3,398. (*Id.*) By way of support, Bookworm offers documentary evidence of its dealings with Simmons. (*Id.* at ex. A (Cohen aff.); Pl.'s Mot. for Summ. J. App. at 16 (Simmons' Offer to Purchase).) To date, Tirado, who has insisted on proceeding *pro se* in this matter, has not filed an opposition to Bookworm's renewed summary judgment motion.

As an initial matter, it is important to note that, by narrowing its claims for damages to the loss of accrued interest from the Simmons sale alone, Bookworm has abandoned any other claims for damages that may lie against Tirado. The record strongly suggests that, by filing an improper *lis pendens* against Plots 233, 234, and 235, Tirado also interfered with Bookworm's sale of Plot 233 to Hospedales. (*See* Mem. & Order of Mar. 22, 2002, at 3-4, 8; Pl.'s Renewal of Mot. to Strike *Lis Pendens, etc.*, ¶¶6-7 & ex. A (Cohen aff.) & ex. B (Hospedales' Offer to Purchase).) However, although this Court determined that Tirado's filing of the *us pendens* was inappropriate, Bookworm fails to allege any injury with respect to its attempt to sell Plot 233. The Court, therefore, will consider the issue of Bookworm's damages only with respect to the aborted sale of Plot 235 to Simmons.

Rule 56 of the Federal Rules of Civil Procedure provides that judgment shall be rendered in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of proving that no material issue of fact is in dispute. *Matsushita Flee Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Once the moving party has carried its initial burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting FED. R. CIV. P. 56(e)) (internal quotations omitted). *See also Skopbank v. Allen-Williams Corp.*, 39 V.I. 220, 227-28 (D.V.I. 1998) (stating that nonmoving party must provide evidence that is sufficiently probative and more than a colorable substantiation in support of its case). If the

nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The role of the court is not to weigh the evidence for its truth or credibility, but merely to ascertain whether a triable issue of fact remains in dispute. *Suid v. Phoenix Fire & Marine Ins. Co.*, 26 V.I. 223, 225 (D.V.I. 1991) The nonmoving party receives "the benefit of all reasonable doubts and inferences drawn from the underlying facts." *Aristide v. United Dominion Constructors, Inc.*, 30 V.I. 224, 226 (D.V.I. 1994). Even where a party does not respond to a summary judgment motion, judgment must be denied unless the movant meets its initial burden of showing absence of material facts in dispute. *Carty v. Hess Oil V.I. Corp.*, 42 V.I. 125, 78 F. Supp. 2d 417 (D.V.I. 1999).

The Virgin Islands Code provides that:

The rate of interest shall be nine (9%) per centum per annum on—
(1) all monies which have become due;
(2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied;
(3) money due upon the settlement of matured accounts from the day the balance is ascertained; and
(4) money due or to become due where there is a contract and no rate is specified.

11 V.I.C. § 951(a).

The issue of whether 11 V.I.C. § 951(a) allows for the imposition of prejudgment interest in cases involving injury to property is a question of first impression in this jurisdiction. As an initial matter, Bookworm has laid a strong factual foundation in favor of its claim for damages as a matter of law Bookworm has offered unrefuted evidence of its intent to contract with Simmons for the sale of Plot 235 for $45,000, which would have resulted in net proceeds of $39,600. (*See* Pl.'s Renewed Mot. for Partial Summ. J. at ex. A (Cohen aff.); Pl.'s Mot. for Summ. J. App. at 16 (Simmons' Offer to Purchase).) Bookworm has also offered unrefuted evidence of its attempt to mitigate damages through the sale of Plot 235 to Snyder for $50,000, which resulted in realized net proceeds of

304

$47,500. (*See* Pl.'s Renewed Mot. for Partial Summ. J. at ex. A (Cohen aff.).)

The question remains, however, whether Bookworm is entitled to prejudgment interest on the proceeds that it would have received had the Simmons sale been consummated, and if so, what is the appropriate rate of interest. This is not an academic exercise; Bookworm's successful mitigation of its damages resulted in a greater amount of net proceeds than it would have had from a completed sale to Simmons. Without the accrual of interest on the net proceeds from the aborted Simmons sale, Bookworm cannot demonstrate mathematically that it was injured as a result of Tirado's tortuous interference, thereby defeating its motion for summary judgment on the issue of damages.

■■ The grant or denial of prejudgment interest remains within the sound discretion of the trial court. *Dewerd v. Bushfield*, 38 V.I. 202, 206 (D.V.I. App. Div. 1998). The assessment of prejudgment interest is permissible where the interests of justice so demand. RESTATEMENT (SECOND) OF TORTS § 931(1)(b); *Antilles Ins., Inc. v. James*, 30 V.I. 230, 256 (D.V.I. App. Div. 1994). Section 951(a) of Title 11 provides for awards of prejudgment interest in situations where the amount due is easily ascertainable. *Antilles*, 30 V.I. at 256. It is clear, however, that § 951(a) is not a proper mechanism for seeking prejudgment interest arising from a non-contractual tort. The language that Bookworm relies upon—that interest may be awarded either for all monies that have become due or where there is a contract with an unspecified rate term— implicates the relationship among parties who are bound by either an explicit or implicit contract,[3] not the assessment of damages against a tortfeasor for injuries committed upon an unwilling victim.

Furthermore, even if a set of facts arose under which § 951(a) would be applicable to an action in tort, those circumstances are not present here. Any money that had become due was a debt owed to Bookworm by Simmons, not Tirado. Tirado never entered into a contract with Bookworm for any sum of money, and nothing in § 951(a) suggests that Tirado, as a third-party tortfeasor, should assume the obligations of a contractual

---

[3] *See, e.g., Hartford Accident & Indem. Co. v. Sharp*, 34 V.I. 383, 87 F.3d 89 (3d Cir. 1996) (involving a beneficiary to an insurance policy), *DeWerd v. Bushfield*, 38 V.I. 202, 993 F. Supp. 365 (D.V.I. App. Div. 1998) (concerning a purchase money mortgage executed between a buyer and seller).

party such as Simmons. Likewise, the absence of a contract between Tirado and Bookworm is fatal to Bookworm's argument that the lost proceeds of the Simmons sale somehow amount to a contract with an unspecified rate of interest. Thus, Bookworm is not entitled to prejudgment interest under the provisions of 11 V.I.C. § 951(a).

■ This conclusion, however, does not end this inquiry. Although Bookworm is not entitled to prejudgment interest as a matter of contract, Bookworm can recover prejudgment interest as a matter of tort law. The Virgin Islands Code provides that, where there is no local statutory or case law to the contrary, courts may rely upon the common law, as set forth in the restatements, as legal authority. 1 V.I.C. § 4. The second restatement of torts provides that a plaintiff:

> is entitled to interest upon the amount found due (a) for the taking or detention of land, chattels or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, from the time adopted for their valuation to the time of judgment, or (b) ... *for other harms to pecuniary interests* from the time of the accrual of the cause of action to the time of judgment, if the payment of interest is required to avoid an injustice.

RESTATEMENT (SECOND) OF TORTS § 913 (emphasis added). The Court has no difficulty finding that Tirado's meddling with Bookworm's attempt to sell Plot 235 to Simmons amounted to an injury to Bookworm's pecuniary interest in its land—namely, the ability of Bookworm to alienate its land freely. *See, e.g., von Kressenbrock-Praschma v. Saunders*, 48 F.3d 323, 326-27 (8th Cir. 1995) (noting that the ability to transfer the possession of property freely is an important element of ownership); *see also* 63C AM. JUR. 2D *Property* § 35 ("One of the principal and most important rights incident to ownership is alienability, or the right to disposition.") (citing cases). Thus, Bookworm is entitled to an assessment of interest on the net proceeds that it would have received from the Simmons sale, absent Tirado's interference.

■ The final determination to be made is the rate of interest that may be assessed on the unrealized net proceeds from the Simmons sale. Given that § 951(a) authorizes a legal rate of 9% for contractual obligations, it does not offend the interests of justice to impose an identical rate on liquidated damages in a tort action. Consequently, this Court will

exercise its discretion by assessing prejudgment interest at the rate of 9% per year on the net proceeds that Bookworm would have received from the Simmons sale.[1]

Thus, this Court concludes that, upon a thorough review of the record and the pleadings reveals, summary judgment on the issue of damages is appropriate as a matter of law. Bookworm has limited its damages to lost interest only and has offered sufficient evidence that it is entitled to such damages by comparing the net proceeds from the Snyder sale with the expected proceeds from the failed Simmons sale, adjusted for interest. (*See* Pl.'s Renewed Mot. for Partial Summ. J. at 1-2.) Tirado has never contested any of the figures cited by Bookworm. Even granting Tirado the benefit of all reasonable doubts and inferences, this Court concludes that Bookworm has met its burden of showing an absence of material facts in dispute with respect to damages.

Accordingly, the simple interest[2] owed to Bookworm equals the net proceeds of the failed Simmons sale ($39,600) multiplied by the interest rate (9% or 0.09) multiplied by the period of time for which the interest accrues (in this case, three years), or $10,692. This amount is reduced by $7,900, which is the difference between the net proceeds that Bookworm actually received by mitigating its damages through the sale of Plot 235 to Snyder ($47,500) and the net proceeds that it would have received from the failed Simmons sale ($39,600). Therefore, the total amount of damages incurred by Bookworm as a result of Tirado's interference with Bookworm's alienation of its property is $2,792. An appropriate judgment for this sum will issue.

---

[1] The legal interest rate of 9% per annum, as provided by 11 V.I.C. § 951(a), should not be confused with the interest rate on money judgments and decrees, which is governed by 5 V.I.C. § 426(a) (1997 & Supp. 2002) and which was reduced in 2000 from 9% per annum to 4% per annum. *See* Fiscal Year 2001 Omnibus Authorization Act, No. 6391, § 2(s) 2000 V.I. Sess. L. 458 (2000) In any event, even if 5 V.I.C. § 426(a) is implicated in this matter, the tortious acts of Tirado took place well before the judgment rate was amended.

[2] Unless otherwise provided by statute, prejudgment interest is calculated as simple interest. *Cherokee Nation v. United States*, 270 U.S. 476, 490, 46 S. Ct. 428, 433-34, 70 L. Ed. 694 (1926). The formula for simple interest is $I = PRT$, where $I$ is simple interest, $P$ is the principal amount, $R$ is the interest rate, and $T$ is the length of time that the principal is held. AM. JUR. 2D *Desk Book*, Item No. 268 (2d ed. 1998).