PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4265, 14-4394 and 14-4395
_____

ROBERT ADDIE; JORGE PEREZ;
JASON TAYLOR,

Appellants in 14-4265

v.

CHRISTIAN KJAER; HELLE BUNDGAARD;
STEEN BUNDGAARD; JOHN KNUD FÜRST;
KIM FÜRST; NINA FÜRST; KEVIN F. D'AMOUR

CHRISTIAN KJAER; HELLE BUNDGAARD;
STEEN BUNDGAARD; JOHN KNUD FÜRST;
KIM FÜRST; NINA FÜRST,

Appellants in 14-4395

KEVIN F. D'AMOUR,

Appellant in 14-4394

_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3-04-cv-00135)
District Judge:  Honorable Curtis V. Gómez

_____

Argued December 10, 2015
Before:  FISHER, KRAUSE, and ROTH, *Circuit Judges*.

(Filed: September 7, 2016)

Robert L. Byer
Duane Morris
600 Grant Street, Suite 5010
Pittsburgh, PA 15219

Robert M. Palumbos  [*ARGUED*]
John J. Soroko
Andrew R. Sperl
Duane Morris
30 South 17th Street
United Plaza
Philadelphia, PA 19103

*Counsel for Appellants Robert Addie et al.*

Carol G. Hurst
3562 Honduras, Suite 7
St. Thomas, VI 00802

Sherry L. Talton  [*ARGUED*]
302 North Market Street, Suite 450
Dallas, TX 75202
*Counsel for Appellees/Cross-Appellants Christian Kjaer et al.*

Maria T. Hodge, Esq.  [*ARGUED*]
Gaylin Vogel, Esq.
Hodge & Hodge
1340 Taarneberg
St. Thomas, VI 00802
*Counsel for Appellee/Cross-Appellant Kevin F. D'Amour*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

The romantic notion of having an island to one's self has long captivated people's imagination. Twelve years ago, the parties to this case contemplated the sale and purchase of a small island in the U.S. Virgin Islands. The deal fell apart and took a decidedly unromantic turn—the parties have been litigating the aftermath ever since. We addressed the merits of the parties' claims in a previous opinion, *Addie v. Kjaer*, 737 F.3d 854 (3d Cir. 2013). At issue in the present appeals are prejudgment and postjudgment interest and attorney's fees.

**I**

Our previous opinion provided a detailed factual and procedural history. *Id.* at 857–61. There is no need to rehash that history in its entirety here, so what follows is a condensed version.

In 2004, Robert Addie, Jorge Perez, and Jason Taylor entered into several contracts to buy a small island off the coast of St. Thomas and a launch point on St. Thomas for, respectively, $21,000,000 and $2,500,000. The sellers were Christian Kjaer and his family members Helle Bundgaard, Steen Bundgaard, John Knud Fürst, Kim Fürst, and Nina Fürst. The sellers' attorney was Kevin D'Amour, who was also the sole owner of the escrow company involved in the transaction. The contracts required the buyers to pay a deposit of $1,000,000. The buyers later paid an additional $500,000 to extend the closing date. Taylor provided the money for these deposits, which were nonrefundable. After another extension of the closing date, the buyers had not paid the purchase price, and the sellers had not conveyed marketable title. D'Amour sent the buyers a notice of default, and the buyers in turn demanded that the deposits be refunded. Shortly thereafter, the buyers sued the sellers and D'Amour in the District Court of the Virgin Islands, asserting various tort and contract claims. The sellers filed counterclaims.

The district court granted summary judgment to the buyers on a conversion claim against D'Amour for $500,000.[1] The remaining claims were tried to a jury, which awarded Taylor (alone) $1,546,000 (remitted to $1,500,000) in contract damages from the sellers and $46,000 for fraudulent misrepresentation by D'Amour. The jury awarded the sellers $339,516.76 in damages from Addie and Perez for misrepresenting their ability to purchase the properties, but

---

1.    The district court also dismissed the buyers' claims against the sellers for negligent misrepresentation, fraud, and conversion.

4

the district court granted Addie and Perez judgment as a matter of law because it concluded that the tort claims were barred by the gist of the action doctrine. On motion by the sellers, the district court reduced Taylor's contract damages award to $0, concluding that no damages were appropriate since all parties had breached the contracts. The district court upheld the fraudulent misrepresentation verdict against D'Amour for $46,000.

On appeal, we concluded that the gist of the action doctrine applied and barred *all* tort claims. *Id.* at 865. We affirmed the order granting judgment as a matter of law to Addie and Perez and reversed both the order granting summary judgment against D'Amour and the jury verdict against D'Amour. We concluded that the buyers and the sellers failed to perform under the contracts and affirmed the order of the district court denying all damages for breach of contract. *Id.* at 864. But we also concluded that Taylor was entitled to restitution from the sellers in the amount of $1,500,000. *Id.* at 864–65.

On remand, the district court entered judgment for Taylor for $1,500,000 on April 3, 2014. The district court entertained motions from Taylor (for prejudgment interest, costs, and attorney's fees) and D'Amour (for costs and attorney's fees).

The district court found that awarding prejudgment interest at the statutory rate of 9 percent "would amount to a windfall," and instead awarded prejudgment interest at a rate of 3 percent for the time during which the sellers possessed the funds—September 22, 2004, to April 26, 2010, and November 7, 2011, to April 3, 2014. (App. 219.) From April 26, 2010, to November 7, 2011, the funds were deposited in the registry of the district court, and the court awarded the

5

interest actually earned during that period. The district court concluded that postjudgment interest should run from April 3, 2014, the date of its judgment after remand, and not August 14, 2009, the date of its original judgment.

The district court declined to award attorney's fees to Taylor, concluding that he "was a prevailing party in a meaningful sense on only one claim—unjust enrichment." (App. 217.) Taylor's "role in breaching the contract" and the complexity of the case "counsel[ed] against awarding any party attorney's fees." (App. 217–18.) The district court concluded that D'Amour was not entitled to an award of attorney's fees because of his conduct. The court noted that the jury found he made fraudulent misrepresentations and fraudulently failed to disclose information he was under a duty to disclose. Taylor,[2] the sellers, and D'Amour filed notices of appeal.

## II[3]

We are faced with five issues in these appeals. First, we address whether it was appropriate to award prejudgment interest on the $1,500,000 in restitution awarded to Taylor, and, if so, whether the district court erred by awarding 3 percent interest. We conclude that prejudgment interest at 9 percent is mandatory in this case under the Virgin Islands

---

2.   Addie and Perez disclaimed any interest in the $1,500,000 awarded to Taylor.

3.   The district court had jurisdiction under 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

6

prejudgment interest statute. Second, we review the district court's decision to award only the actual interest earned while the disputed funds were in the court's registry, and we find no error in that decision. Third, we conclude that the district court was correct to award postjudgment interest from the date of the judgment after remand rather than the date of the original judgment following the jury verdict. Fourth and fifth, we find that the district court did not abuse its discretion by declining to award attorney's fees to Taylor and D'Amour.

**A**

We start our prejudgment interest analysis with the Virgin Islands prejudgment interest statute, which provides, in pertinent part:

> (a) The rate of interest shall be nine (9%) per centum per annum on—(1) all monies which have become due; (2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied; (3) money due upon the settlement of matured accounts from the day the balance is ascertained; and (4) money due or to become due where there is a contract and no rate is specified.

V.I. Code tit. 11, § 951(a).

The district court found that Taylor was entitled to prejudgment interest. But the court was concerned that prejudgment interest at 9 percent was "a substantial sum"— approximately $1,300,000— that was "nearly equivalent to the judgment amount." (App. 219.) The court considered this "a windfall." (*Id.*) Accordingly, it reduced the interest rate to

7

3 percent for the periods during which the funds were in the sellers' possession.[4]

The sellers assert that the district court erred by awarding *any* prejudgment interest. Taylor argues that the district court erred by awarding less than the 9 percent interest rate specified by V.I. Code tit. 11, § 951(a). The question we must answer, then, is whether awarding prejudgment interest under V.I. Code tit. 11, § 951(a) is mandatory. We hold that it is mandatory in this case for three reasons.

First, the statute is worded in mandatory terms. It is a simple command: the rate of interest "shall be" 9 percent. Where the Legislature of the Virgin Islands intended to give courts discretion, it did so explicitly. *E.g.*, V.I. Code tit. 5, § 541(b) ("[T]here shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees . . . ."). The prejudgment interest statute affords no such discretion.[5]

---

4. The district court had awarded prejudgment interest at 9 percent in the 2009 judgment following the jury verdict.

5. We have not previously considered whether courts have discretion under V.I. Code tit. 11, § 951(a). We have noted, however, that under Virgin Islands law, "the district court is given discretion to award prejudgment interest on *unliquidated sums* as justice requires." *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 329 (3d Cir. 1985) (emphasis added). This pronouncement is consistent with V.I. Code tit. 11, § 951(a), which applies to money that is due—in other words, liquidated sums.

Second, courts have interpreted similarly worded statutes from other states as mandatory. For example, New York law provides that

> [i]nterest *shall be* recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y. C.P.L.R. § 5001(a) (emphasis added). Under this statute, prejudgment interest is mandatory in a breach of contract action. *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003). The interest rate is also mandatory under New York law. N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."); *Oy Saimaa Lines Logistics Ltd. v. Mozaica-N.Y., Inc.*, 193 F.R.D. 87, 90 (E.D.N.Y. 2000) ("Under New York law, the court has no discretion to award prejudgment interest at a rate higher than the statutory rate."); *cf. Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1494 (9th Cir. 1985) ("Under New York law, the district court had no discretion to deviate from the 9% rate in awarding post-judgment interest.").

Massachusetts has a similarly phrased statute for prejudgment interest in tort actions. Under Massachusetts law,

> [i]n any action in which a verdict is rendered or a finding made or an order for judgment made for pecuniary

9

> damages for personal injuries to the plaintiff or for consequential damages, or for damage to property, there *shall be* added by the clerk of court to the amount of damages interest thereon at the rate of twelve per cent per annum from the date of commencement of the action . . . .

Mass. Gen. Laws Ch. 231, § 6B (emphasis added). This prejudgment interest is mandatory. *Bennett v. City of Holyoke*, 362 F.3d 1, 11 (1st Cir. 2004). So is the 12 percent interest rate. *Doty v. Sewall*, 908 F.2d 1053, 1063 (1st Cir. 1990).

Third, the Virgin Islands decision that the district court cited in finding it had discretion over whether to award prejudgment interest, *Rasmussen v. Dalmida*, 50 V.I. 1032 (D.V.I. 2008), relied on inapposite authority. In *Rasmussen*, the district court stated that "[a] court may exercise its discretion to award prejudgment interest 'upon considerations of fairness and prejudgment interest may be denied when its exaction would be inequitable.'" *Id.* at 1039–40 (quoting *Thabault v. Chait*, 541 F.3d 512, 534 (3d Cir. 2008)). *Thabault* was a diversity case in which we applied New Jersey law. The New Jersey prejudgment interest statute, unlike that of the Virgin Islands (or New York or Massachusetts), explicitly permits courts to "suspend the running" of prejudgment interest "in exceptional cases." N.J. Court R. 4:42-11(b). The *Thabault* decision provides no basis to conclude that prejudgment interest in the Virgin Islands is similarly discretionary.

*Rasmussen* also cited *Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992), and *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1442 (9th Cir.

1996). In *Anthuis*, an ERISA case, we noted that, "[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion." 971 F.2d at 1009 (quoting *Ambromovage v. United Mine Workers*, 726 F.2d 972, 981–82 (3d Cir. 1984)). In *Knapp*, a securities law case under section 10(b) of the Securities Exchange Act and Rule 10b-5, the Court of Appeals for the Ninth Circuit stated that it was appropriate for the district court to deny prejudgment interest when it would amount to "a windfall recovery" for the plaintiff. 90 F.3d at 1442. ERISA and Rule 10b-5 do not provide for prejudgment interest and thus fall under the general, court-made rule committing the question to the discretion of the district courts. These decisions, and other decisions interpreting federal statutes without a prejudgment interest provision, are simply not relevant for interpreting V.I. Code tit. 11, § 951(a).[6]

We must address one additional argument that the district court could exercise its discretion in this case. The sellers argue that, because the recovery was for restitution rather than breach of contract, the district court had the authority to vary

---

6. Other decisions of lower courts in the Virgin Islands have stated that awarding prejudgment interest is discretionary. *See, e.g.*, *Deward v. Bushfield*, 993 F. Supp. 365 (D.V.I. App. Div. 1998) (reviewing the trial court's decision to grant prejudgment interest for abuse of discretion); *Bookworm, Inc. v. Tirado*, No. Civ. 538/1997, 2002 WL 1765782 (V.I. Terr. Ct. July 1, 2002). We are not bound by those decisions, and we find them similarly mistaken.

11

from the statutory rate by exercising its equitable powers. Sellers support this contention by citing *Peterson v. Crown Financial Corp.*, 661 F.2d 287 (3d Cir. 1981). Interpreting Pennsylvania law, we found in *Peterson* that "because [the plaintiff's] claim sounds in restitution, it calls for the exercise of the court's broader equitable powers. … [T]he trial judge does have discretion in such cases to award damages in the nature of prejudgment interest in an amount greater than [the] six percent [provided by statute]." *Id.* at 292–93.

The applicable Pennsylvania statute provided that

> Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

41 Pa. Stat. § 202. By its terms, this statute applies to contracts and contractual damages. *See Peterson*, 661 F.2d at 292 ("[U]nder Pennsylvania law, prejudgment interest in the ordinary suit for contract damages is limited to the six percent legal rate."). In contrast, the Virgin Islands statute is broader and applies to "all monies which have become due," not just money due under a contractual theory of recovery. V.I. Code tit. 11, § 951(a)(1).[7]

---

7.  New York's prejudgment interest statute similarly provides discretion in equitable actions, and in this

For these reasons, we hold that prejudgment interest at 9 percent is required in this case. The Legislature of the Virgin Islands has determined that prejudgment interest is to be awarded at the rate of 9 percent, and it is not our place to alter the statute or add our gloss to it.[8] The district court erred by awarding interest at a rate other than the rate provided by statute.[9]

---

respect it differs from V.I. Code tit. 11, § 951(a). N.Y. C.P.L.R. § 5001(a).

8. Should the Legislature of the Virgin Islands determine that 9 percent is too high or that courts should have discretion in making interest awards, it is perfectly capable of amending the law, as it has done in other contexts. The Virgin Islands postjudgment interest statute, V.I. Code tit. 5, § 426, formerly provided for a 9 percent interest rate but was amended in 2001 to reduce the rate to 4 percent. No similar change was made to V.I. Code tit. 11, § 951(a).

9. We do not share the district court's concern that awarding Taylor prejudgment interest at the statutorily required rate of 9 percent would amount to a windfall. When Taylor handed over his deposit in 2004, interest rates were significantly higher than they are today. Before they fell to the current rate of around 3.5 percent, prime lending rates, for example, were around 5 percent in 2004, steadily climbed to around 8 percent by 2006, and hovered around 6 to 8 percent until 2008. *See Selected Interest Rates (Weekly) - H.15*, Bd. of

**B**

We next turn to the interest awarded for the period during which the disputed funds were in the registry of the district court, April 14, 2010, to November 7, 2011. The district court explained that the court "is not a for-profit enterprise, nor is it in the business of generating profit for

Governors of Fed. Reserve Sys., http*://www.federalreserve.gov/releases/h15/default.htm* (last visited Aug. 25, 2016) (Federal Reserve statistical sheets for 2004, 2006, 2007, 2008, and 2016); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1235 n.12 (11th Cir. 1999) (taking judicial notice of the prime rate). Putting aside these fluctuations, the interest Taylor could have otherwise collected on his $1,500,000 is significant when we consider monthly compounding over the course of a decade. For example, monthly compounding of $1,500,000 at an interest rate of 3.5 percent over ten years would yield over $600,000 in interest, and compounding at a rate of 6 percent would result in interest of $1,200,000. Using another proxy, if Taylor invested his $1,500,000 in a S&P 500 stock market index fund over this time period, he could have expected to roughly double his investment, assuming dividend reinvestment. *See* Chris Kahn, *Historical returns investing calculator*, Bankrate.com, http://www.bankrate.com/finance/investing/historical-returns-investing-calculator.aspx (last visited Aug. 25, 2016). In our view, these considerations counterbalance what might otherwise seem like a windfall for Taylor.

parties." (App. 220.) For that reason, the court ordered that Taylor receive the actual interest earned while the money was in the registry of the court. This was $19,650.45. Taylor argues that the district court should have awarded him 9 percent prejudgment interest even for the period during which the funds were in the registry of the court, a substantially larger sum.

Under our precedent, however, the district court was correct. In *Hartford Accident & Indemnity Co. v. Sharp*, 87 F.3d 89 (3d Cir. 1996), we interpreted V.I. Code tit. 11, § 951(a) to permit prejudgment interest from the date a notice of claim was filed until the date the defendant deposited the funds into the district court's registry. *Id.* at 93 (citing *Atlin v. Security-Conn. Life Ins. Co.*, 788 F.2d 139, 142 (3d Cir. 1986), for the proposition that "no interest runs against the stakeholder after he pays the disputed sum into court"). In *Atlin*, we noted two factors supporting the conclusion that paying the funds into the court relieves the paying party from prejudgment interest: "First, the stakeholder no longer has access to the money and enjoys no further benefit. Second, while deposited in the registry, the money presumably will be invested and accrue interest for the benefit of the ultimate recipient." *Atlin*, 788 F.2d at 142.

Given this clear authority, the district court did not err by awarding Taylor only the actual interest earned while the funds were in the registry of the court. We will affirm the judgment of the district court in this respect.

## C

The sellers assert that the district court erroneously determined the date prejudgment interest ends and postjudgment interest begins. The sellers argue that postjudgment interest should accrue from August 14, 2009,

when the district court entered its original judgment following the jury verdict. Taylor argues that the district court correctly awarded postjudgment interest from April 3, 2014, the date of the district court's judgment after remand.[10]

Our review of the district court's determination of the accrual date for postjudgment interest is plenary. *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993). There are no relevant decisions interpreting the Virgin Islands postjudgment interest statute, V.I. Code tit. 5, § 426. Our analysis is guided by the federal postjudgment interest statute, 28 U.S.C. § 1961, which we have noted is "analogous" to V.I. Code tit. 5, § 426. *Christian v. Joseph*, 15 F.3d 296, 298 (3d Cir. 1994).

Whether postjudgment interest should run from the date of the original judgment following the jury verdict or the post-remand judgment "turns on the degree to which the original judgment was upheld or invalidated on appeal." *Loughman*, 6 F.3d at 97 (interpreting 28 U.S.C. § 1961). The application of this standard is fact specific. For example, "if the original judgment is affirmed in whole, such as where the court of appeals reverses the district court's grant of judgment n.o.v. and orders the original judgment reinstated in its entirety, post-judgment interest will accrue from the date of the first judgment." *Id.* at 98. To the contrary, if the original judgment is reversed, postjudgment interest accrues from the

10.  This dispute is animated by the difference between the statutory prejudgment interest rate (9 percent) and the statutory postjudgment interest rate (4 percent). *Compare* V.I. Code tit. 11, § 951(a), *with* V.I. Code tit. 5, § 426.

16

date of the judgment after remand. "[D]istilled to its essence," the inquiry is when "liability and damages, as finally determined, were ascertained or established." *Id.*

In this case, the jury determined that the sellers were liable to Taylor for $1,546,000 in damages for breach of contract, which the district court remitted to $1,500,000 in its judgment dated August 14, 2009. The sellers moved for judgment as a matter of law or amended judgment. The district court found that Taylor failed to tender performance and was barred from recovering on his breach of contract claim. In an order dated March 1, 2011, the court amended the judgment from $1,500,000 to $0. In the first appeal, we agreed that neither Taylor nor the sellers could recover for breach of contract but found that Taylor was entitled to restitution of the $1,500,000 deposit. *Addie*, 737 F.3d at 865. On April 3, 2014, the district court ordered that the sellers return Taylor's $1,500,000 deposit and entered judgment in that amount.

The sellers argue that damages were ascertained at the time of the August 2009 judgment because "[t]he amount of the award is the amount of Taylor's deposit, which has always been known in this litigation." (Seller's Br. 40.) The sellers assert that the fact that the legal theory underlying the damage award changed from breach of contract to restitution is irrelevant. This argument is unavailing.

When the legal basis for the judgment changes after appeal, postjudgment interest properly begins from the time of the judgment after remand. *See Loughman*, 6 F.3d at 97–98 ("In general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest

17

accrues from the date of the first judgment." (quoting *Cordero v. De Jesus-Mendez*, 922 F.2d 11, 16 (1st Cir. 1990)); *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("[W]here the first judgment is vacated because it lacks a legal basis or requires further factual development, the vacated award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand.").

As we set forth in the first *Addie* decision, we affirmed the amended judgment of $0 on the contractual claims because there was no legal basis for the breach of contract damages awarded to Taylor in the August 2009 judgment. *Addie*, 737 F.3d at 864. Although the amount of Taylor's recovery ultimately was the same in the 2009 and 2014 judgments, the nature and legal basis for the judgments changed. In accordance with our instructions, on remand in 2014, the district court granted Taylor recovery on his unjust enrichment claim. Back in 2009, the jury found for Taylor on this claim during the liability phase of the trial, but the district court withdrew it from the jury during the damages phase, eventually holding that an unjust enrichment award is inappropriate where there are valid contracts. *Addie*, 737 F.3d at 860. Because the district court withdrew it from the jury, there was no judgment on the unjust enrichment claim. Thus, this is not one of those cases in which a court of appeals reversed a judgment of damages n.o.v. and reinstated a jury verdict. The final determination of liability and damages was not ascertained or established until the judgment of April 3, 2014, and the district court correctly determined that this was the date from which postjudgment interest accrues. *Loughman*, 6 F.3d at 98. We will therefore affirm the district court's judgment on this issue.

18

## D

The Virgin Islands Code authorizes courts to award attorney's fees to the "prevailing party in the judgement." V.I. Code tit. 5, § 541(b). Whether to award attorney's fees and the amount of any award is within the discretion of the district court and will only be reversed for a clear abuse of discretion. *Id.*; *Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205, 1207 (3d Cir. 1969). The determination of whether a party is a "prevailing party" under the statute is a legal question subject to plenary review. *See Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (interpreting "prevailing party" in the context of 42 U.S.C. § 1988). Taylor argues that the district court erroneously determined that he was not a prevailing party and asks us to reverse and remand so that the district court can properly exercise its discretion in the first instance.

Taylor's interpretation of the district court's opinion is flawed. The district court did not determine that Taylor was not a prevailing party; instead, it exercised its discretion to award no fees despite Taylor's being a prevailing party. *Cf. Raab v. City of Ocean City*, — F.3d —, — (3d Cir. 2016) (noting that in the context of § 1988, prevailing party status is necessary but not sufficient to justify a fee award). The district court noted that "Taylor was a prevailing party in a meaningful sense on only one claim—unjust enrichment." (App. 217.) The district court explained that "Taylor, and his co-plaintiffs, failed on the vast majority of claims that they brought during the course of this litigation." (*Id.*) The district court considered "[t]he complexity of [the] matter, … the inextricably intertwined breaches occasioned by each party to the transaction," and "the balance between prevailing claims and failed claims." (App. 217–18.) Weighing these

19

considerations, the district court exercised its discretion and declined to award Taylor attorney's fees.

Alternatively, Taylor argues that the district court failed to make sufficient factual findings to support a discretionary denial of attorney's fees to Taylor. Taylor argues that the district court's reliance on the balance between prevailing claims and failed claims is erroneous due to a flawed prevailing party analysis and that Taylor's role in breaching his obligations under the contract was irrelevant.

The district court did not engage in a flawed prevailing party analysis. And Taylor cites no cases for the proposition that considering a party's conduct is entirely irrelevant for determining whether to award attorney's fees. In similar contexts, courts have approved considering a party's conduct when deciding whether to award attorney's fees. For example, in the context of whether to award fees under ERISA, which also permits a discretionary award of attorney's fees, 29 U.S.C. § 1132(g)(1), we have instructed district courts to consider five factors, including "the offending parties' culpability or bad faith" and "the relative merits of the parties' position." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983). These two factors are fairly analogous to considering the balance of the claims won and lost between the parties and the parties' underlying conduct.

Declining to award attorney's fees to Taylor was not an abuse of discretion.

## E

D'Amour also appeals the district court's denial of his motion for attorney's fees. In ruling on D'Amour's motion, the district court considered D'Amour's conduct. In ruling on the parties' summary judgment motions, the district court found that D'Amour was liable to the buyers for conversion

20

as a matter of law, and the jury found that D'Amour committed fraud. In the first appeal, we held that the gist of the action doctrine barred the conversion and fraud claims. Nevertheless, on remand the district court found that D'Amour's underlying conduct weighed against awarding attorney's fees even though he was a prevailing party.

D'Amour argues that the district court abused its discretion by relying on facts found by the jury during the jury's consideration of legally barred claims. According to D'Amour, our ruling in the first appeal that the gist of the action doctrine barred the tort claims "plainly warrants the conclusion that *any* prior findings of the lower court with respect to the improper tort claims were erroneous, and such findings are therefore legally irrelevant." (D'Amour's Br. 13.) D'Amour cites no decisions supporting this position.

When we vacated the judgments against D'Amour—because the tort claims were inextricably intertwined with breach of contract claims—the conduct that led the court and the jury to find wrongdoing by D'Amour did not disappear. D'Amour's argument that his conduct cannot be considered because he could not be liable in tort is not persuasive. The district court did not abuse its discretion by considering D'Amour's conduct. We will affirm the denial of D'Amour's motion for attorney's fees.

### III

For the reasons set forth above, we affirm the district court's judgment in all respects except where it awarded prejudgment interest at a rate other than the statutorily provided 9 percent. On the issue of the prejudgment interest rate we reverse and remand.

21